[Cite as *Leveque 41, L.L.C. v. Leveque Tower Condominium Assn., Inc.*, 2025-Ohio-2055.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Leveque 41, LLC et al., | : | |
| Plaintiffs-Appellants, | : | No. 24AP-368 |
| | | (C.P.C. No. 23CV-4780) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Leveque Tower Condominium | : | |
| Association, Inc. et al., | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on June 10, 2025

**On brief**: *Loveland Law, LLC*, and *Bryan S. Hunt*, for appellants. **Argued**: *Bryan S. Hunt*.

**On brief**: *Vorys, Sater, Seymour and Pease, LLP, Joseph R. Miller* and *Elizabeth S. Alexander*, for appellees The LeVeque Tower Condominium Association, Inc., and Lawyers Development Company, LLC. **Argued**: *Joseph R. Miller*.

**On brief**: *Arnold & Clifford LLP, James Arnold, Damian M. Clifford*, and *Gerhardt A. Gosnell II*, for appellee Tower 10, LLC and Lawyers Development Company, LLC.

**On brief**: *Baker & Hostetler LLP, Albert G. Lin, Robert J. Tucker*, and *Christopher K. Riedel*, for appellees The LeVeque Tower Condominium Association, Inc., Stephanie Chitwood, David Feltman, Drew Meyers, Robert Meyers, Brett Kaufman, Frank Sasso, First LeVeque, LLC and LVQ, LLC.

**On brief**: *Mazanec, Raskin & Ryder Co., LPA, Steven K. Kelley*, and *Frank H. Scialdone*; *Willis Law Firm, LLC*, and *Dimitri G. Hatzifotinos*, for appellee Link Real Estate Group, LLC.

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiffs-appellants, LeVeque 41, LLC, LeVeque Forty, LLC, and Towertop II, LLC (collectively "appellants"), appeal from a decision and order granting the motion of defendants-appellees, The Leveque Tower Condominium Association, Inc. ("the condo association"), Link Property Management Company, Lawyer's Development Company, LLC, Stephanie Chitwood, David Feltman, Robert Habeeb, Brett Kaufman, Ian Labitue, Drew Meyers, Robert Meyers, Frank Sasso, Amanda Wilson, First LeVeque, LLC, LVQ, LLC, and Tower 10, LLC to stay further proceedings pending arbitration. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellants are the owners of four condominium units in LeVeque Tower, a building in Columbus, Ohio. Appellees include the condo association, nine individual members of the condo association's board, and five business entities. Two of the business entities—Link and Lawyer's Development—provided property management for the association. The remaining three business entities—First LeVeque, LLC, LVQ, LLC, and Tower 10—are the owners of additional condominium units in LeVeque Tower.

{¶ 3} Appellants initially filed a complaint on July 7, 2016, followed by an amended complaint on July 31, 2023. As set forth in appellants' amended complaint, the original declaration formed The LeVeque Tower Condominium and created the condo association in accordance with R.C. 5311.08(A)(1). On June 17, 2015, the amended declaration fully amended and restated the original declaration. The amended declaration includes the condo association's current bylaws.

{¶ 4} Appellants alleged LVQ owns 15 condo units and appointed one board member, First LeVeque owns 11 condo units and appointed one board member, and Tower 10 owns 17 condo units and appointed one board member. Appellants further alleged Robert Meyers, one of the individual appellees, has an ownership stake in First LeVeque, Tower 10, and LVQ and has "taken control of the Board." (Am. Compl. at ¶ 37, 196.) The amended complaint generally alleged the condo association, the named board members, and the unit owner appellees intentionally disregarded the obligations owed to all unit owners by allowing collection delinquencies in condominium assessments owed by LVQ,

First LeVeque, and Tower 10. These collection delinquencies allegedly totaled over $1 million. (Am. Compl. at ¶ 56.)

{¶ 5} In their amended complaint, appellants asserted claims for: (1) declaratory judgment related to the collection of assessments; (2) declaratory judgment related to the reserve fund; (3) permanent injunction related to the collection of assessments; (4) breach of contract against the association and the board appellees; (5) breach of fiduciary duty against the board appellees; (6) negligence against Link; (7) breach of contract against Link; (8) negligence against Lawyers Development; (9) remedy of an accounting; (10) remedy of appointment of receiver; and (11) attorney fees and costs of enforcement. On July 20, 2023, appellants also filed a motion for immediate appointment of receiver.

{¶ 6} On September 11, 2023, the condo association, LVQ, First LeVeque, Tower 10, Lawyers Development, Ms. Chitwood, Mr. Feltman, Drew Meyers, and Robert Meyers moved to dismiss the case or, in the alternative, to compel arbitration and stay proceedings pending arbitration. In subsequent filings, Link and two additional individual appellees, Mr. Kaufman and Mr. Sasso, joined the request to either dismiss the complaint or to compel arbitration. Appellants opposed the motion to dismiss or compel arbitration.

{¶ 7} The trial court denied appellants' motion for immediate appointment of receiver in an August 23, 2023 entry. Appellants subsequently filed a motion for reconsideration of the decision denying immediate appointment of receiver on December 21, 2023.

{¶ 8} In a May 14, 2024 decision and order, the trial court granted the motion to stay proceedings pending arbitration. The trial court determined the amended declaration and bylaws contained an arbitration agreement applicable to appellants' claims against the condo association. Additionally, the court determined that although appellants' claims against the named board members or other unit owners are not subject to the arbitration agreement, those claims must be stayed while appellants' claims against the condo association move through arbitration. The court rejected appellants' arguments that their claims against the condo association were subject to an exception to the arbitration agreement laid out in the bylaws. In the same decision and order, the court denied appellants' motion to reconsider its decision denying immediate appointment of receiver as moot. Appellants timely appeal.

## II.  Assignments of Error

{¶ 9}  Appellants raise the following two assignments of error for our review:

> [I.] The Trial Court erred when it found that Appellants' claims against the LeVeque Tower Condominium Association, Inc. were subject to binding arbitration and stayed the lower court proceedings.

> [II.] The trial court erred when it denied Appellants' December 21, 2023 Motion to Reconsider Immediate Appointment of receiver as moot.

## III.  Final Appealable Order

{¶ 10}  Before we reach the merits of appellants' assignments of error, we must, as a threshold matter, determine whether the entirety of the trial court's May 14, 2024 decision is subject to appellate review at this stage of the proceedings.  Appellees raised in their brief the issue of whether the portion of the court's May 14, 2024 decision denying as moot appellants' December 21, 2023 motion to reconsider immediate appointment of receiver is a final appealable order.

{¶ 11}  Article IV, Section 3(B)(2) of the Ohio Constitution limits the jurisdiction of the appellate courts to considering only final appealable orders.  "If an order is not a final appealable order, the appellate court lacks jurisdiction and the court must dismiss the appeal."  *Tassone v. Tassone*, 2019-Ohio-683, ¶ 7 (10th Dist.), citing *K.B. v. Columbus*, 2014-Ohio-4027, ¶ 8 (10th Dist.).  Final orders "dispos[e] of the whole case or some separate and distinct branch thereof."  *Lantsberry v. Tilley Lamp Co.*, 27 Ohio St.2d 303, 306 (1971).  An order of a trial court is final and appealable only if it satisfies the requirements in R.C. 2505.02 and, if applicable, Civ.R. 54(B).  *Tassone* at ¶ 7, citing *Eng. Excellence, Inc. v. Northland Assocs., L.L.C.*, 2010-Ohio-6535, ¶ 10 (10th Dist.).  The trial court's designation of an entry as a "final appealable order" is not dispositive of the issue.  *In re Murray*, 52 Ohio St.3d 155, 157 (1990).

{¶ 12}  R.C. 2505.02(B) defines final orders and provides, in pertinent part:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

(3) An order that vacates or sets aside a judgment or grants a new trial;

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 13} "If the order is final under R.C. 2505.02, the court must determine whether Civ.R. 54(B) applies." *Peppers v. Scott*, 2016-Ohio-8265, ¶ 11 (10th Dist.), citing *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21 (1989). Civ.R. 54(B) provides, as follows:

When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Where a trial court enters judgment on some but not all of the claims in a multi-claim action or with respect to some but not all of the parties in a multi-party action, an appellate court has no jurisdiction to review the judgment in the absence of express Civ.R. 54(B) language. *In re Estate of Endt*, 2014-Ohio-1749, ¶ 10 (10th Dist.), citing *Moore v. Gross*, 2010-Ohio-

3328, ¶ 12 (10th Dist.).  Thus, if Civ.R. 54(B) applies, the order must contain a certification that " 'there is no just reason for delay.' " *Peppers* at ¶ 11, quoting Civ.R. 54(B).

{¶ 14} Here, the trial court's May 14, 2024 decision and order granted appellees' motion to stay pending arbitration.  In the same decision and order, the court denied as moot appellants' motion to reconsider its decision denying immediate appointment of receiver.  Specifically, the court ordered:

> Further proceedings in this case are STAYED pending completion of arbitration between [appellants], the LeVeque Tower Condominium Association, and any other Unit Owner or Occupant directly subject to third-party claims by the Association.
>
> [Appellants'] claims against all others, including individual Board members, Link Real Estate Group, LLC, and Lawyers Development Company, LLC, are not subject to arbitration unless those parties and [appellants] voluntarily agree to have them included in arbitration. Otherwise, they fall outside the scope of the arbitration provisions in the Declaration. Their resolution must await completion of the arbitration even though principals of res judicata or collateral estoppel may later come into play.
>
> . . .
>
> Counsel shall advise the Court once arbitration is completed so that the case can be reactivated, and any remaining claims heard. [Appellants'] December 21, 2023 Motion to Reconsider Immediate Appointment of Receiver is hereby DENIED as moot.
>
> Pursuant to R.C. 2711.02(C), this is a Final Appealable Order.

(Emphasis in original.) (May 14, 2024 Decision & Order at 11.)

{¶ 15} R.C. 2711.02(B) provides that "[i]f any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court . . . shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement."  Pursuant to R.C. 2711.02(C), "an order under division (B) of this section that grants or denies a stay of a trial of any action pending arbitration . . . is a final order and may be reviewed, affirmed, modified, or reversed on appeal."  Notably, the May 14, 2024 decision and order does not contain Civ.R. 54(B)

language. However, as the Supreme Court of Ohio has explained, "R.C. 2711.02(C) permits a party to appeal a trial court order that grants or denies a stay of trial pending arbitration, even when the order makes no determination pursuant to Civ.R. 54(B)." *Mynes v. Brooks*, 2009-Ohio-5946, syllabus. Therefore, the portion of the trial court's May 14, 2024 decision and order granting appellees' motion to stay pending arbitration is a final appealable order.

{¶ 16} The same trial court order can be a final appealable order for one issue but not final and appealable for additional issues. *See, e.g.*, *B.H. v. State Dept. of Admn. Servs.*, 2017-Ohio-9030, ¶ 7-9 (10th Dist.) (while the portion of the trial court's judgment granting judgment on the pleadings as to one party was not a final appealable order, another portion of the same judgment granting judgment on the pleadings in favor of another party was a final appealable order; thus, this court dismissed one portion of the appeal for lack of a final appealable order and reviewed the other on its merits); *Nationwide Mut. Fire Ins. Co. v. Jones*, 2016-Ohio-513, ¶ 19 (4th Dist.) ("that portion of the trial court's order granting bifurcation is not a final, appealable order and we lack jurisdiction over that portion of Nationwide's appeal"). As outlined above, appellants filed a motion for immediate appointment of receiver on July 20, 2023. The court denied said motion in an August 23, 2023 entry. Subsequently, on December 21, 2023, appellants filed a motion to reconsider the decision denying immediate appointment of receiver. In the final paragraph of its May 14, 2024 decision and order granting a stay pending arbitration, the trial court also denied as moot appellants' motion to reconsider. Therefore, we must determine whether the portion of the court's May 14, 2024 decision and order denying appellants' motion to reconsider is a final appealable order.

{¶ 17} To be a final appealable order subject to review on appeal, the portion of the trial court's May 14, 2024 decision and order denying appellants' motion to reconsider immediate appointment of receiver must satisfy the requirements of R.C. 2505.02. A receivership is a special proceeding as contemplated under R.C. 2505.02. *Lucas v. Reywal Co., L.P.*, 2019-Ohio-27, ¶ 15 (10th Dist.). "It is well-settled that an order appointing or removing a receiver affects a substantial right made in a special proceeding." *Jezerinac v. Dioun*, 2023-Ohio-2882, ¶ 27 (10th Dist.), citing *Whipps v. Ryan*, 2013-Ohio-4334, ¶ 29 (10th Dist.); *State ex rel. Yost v. Summer Rays, Inc.*, 2019-Ohio-3907, ¶ 19 (10th Dist.) ("an order appointing a receiver is a final appealable order that affects a substantial right in a special proceeding"), citing R.C. 2505.02(B)(2). It is less clear, however, whether an order

*denying* the appointment of a receiver is a final appealable order. *See Huntington Natl. Bank v. HPM Div.*, 2010-Ohio-6176, ¶ 16, fn. 1 (10th Dist.) (noting "[t]he Supreme Court of Ohio has also suggested that appointment of a receiver is ancillary to the underlying proceedings, and thus, may be considered a provisional remedy the grant or denial of which is appealable" under R.C. 2505.02(B)(4)), citing *Community First Bank & Trust v. Dafoe*, 2006-Ohio-1503, ¶ 25-26; *Jezerinac* at ¶ 28 ("[a]n interim receivership order *may* affect a substantial right for purposes of R.C. 2505.02(B)(2) if the effect of the order resolves a claim and forecloses future relief") (Emphasis in original.).

{¶ 18} Appellants urge us to conclude the denial of the appointment of a receiver under these facts constitutes a final appealable order under R.C. 2505.02(B). However, we need not definitively determine whether the trial court's denial of the immediate appointment of a receiver here is a final appealable order within the meaning of R.C. 2505.02(B) because appellants did not appeal from the trial court's August 23, 2023 entry denying their motion for the immediate appointment of a receiver. Instead, appellants appeal from the court's May 14, 2024 decision and order denying their motion to reconsider the denial of immediate appointment of a receiver—a critical distinction. If the original August 23, 2023 entry denying the immediate appointment of a receiver was a final appealable order, then the subsequent motion for reconsideration from it is a nullity, and the court's May 14, 2024 decision and order related to the motion for reconsideration is also a nullity and not subject to appeal. *McCualsky v. Appalachian Behavioral Healthcare*, 2017-Ohio-1064, ¶ 11 (10th Dist.), citing *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379 (1981), and *Levy v. Ivie*, 2011-Ohio-4055, ¶ 15 (10th Dist.) (a motion for reconsideration of a final judgment in the trial court is a nullity, and a judgment entered on a motion for reconsideration is also a nullity and, thus, not a final appealable order). On the other hand, if the original August 23, 2023 entry denying the immediate appointment of a receiver was not final but was an interlocutory order, then the subsequent May 14, 2024 decision and order denying reconsideration of that interlocutory order is, itself, interlocutory and thus not final and appealable. *Nami v. Nami*, 2017-Ohio-8330, ¶ 22 (10th Dist.) ("[t]he reconsideration of an interlocutory order is itself an interlocutory order, not subject to appeal"), citing *G.S. v. Khavari*, 2016-Ohio-5187, ¶ 12 (11th Dist.). Under either scenario, the portion of the trial court's May 14, 2024 decision and order denying

appellants' motion to reconsider the denial of the immediate appointment of a receiver is not a final appealable order.

{¶ 19} Accordingly, we dismiss the portion of the appeal challenging the trial court's denial of appellants' motion to reconsider its denial of immediate appointment of receiver as that portion of the May 14, 2024 decision and order is not a final appealable order. Because appellants' second assignment of error relates to the portion of the May 14, 2024 decision and order denying their motion to reconsider immediate appointment of receiver, we dismiss the second assignment of error for lack of jurisdiction. *B.H.*, 2017-Ohio-9030, at ¶ 8.

## IV. First Assignment of Error – Stay Pending Arbitration

{¶ 20} In their first assignment of error, appellants argue the trial court erred in finding the claims against the condo association were subject to binding arbitration.

{¶ 21} Generally, an appellate court reviews a stay pending arbitration for an abuse of discretion. *Michigan Timber & Truss, Inc. v. Summit Bldg. Servs., L.L.C.*, 2021-Ohio-3158, ¶ 10 (10th Dist.), citing *Morris v. Morris*, 2010-Ohio-4750, ¶ 15 (10th Dist.). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27. However, where the appeal of a motion to stay pending arbitration presents a question of law, an appellate court applies a de novo standard of review. *Michigan Timber & Truss* at ¶ 10, citing *Morris* at ¶ 15. " 'Thus, "[a] trial court's decision granting or denying a stay of proceedings pending arbitration is . . . subject to de novo review on appeal with respect to issues of law, which commonly will predominate because such cases generally turn on issues of contractual interpretation or statutory application." ' " *Id.*, quoting *Morris* at ¶ 15, quoting *Hudson v. John Hancock Fin. Servs.*, 2007-Ohio-6997, ¶ 8 (10th Dist.).

{¶ 22} The amended declaration of the condo association includes two arbitration provisions. The first arbitration provision, found in Article XVIII, Section 2 of the amended declaration, provides:

> [I]n the event of any dispute between the Association and any Unit Owner or Occupant, other than with regard to assessments, that cannot be settled by an agreement between them, the matter shall first be submitted to arbitration in accordance with and pursuant to the arbitration law of Ohio

then in effect (presently Chapter 2711 of the Revised Code of Ohio), by a single independent arbitrator selected by the Board.

(Am. Declaration, Art. XVIII, Sec. 2.) The second arbitration provision, found at Article III, Section 2(q) of the amended declaration, states:

In the event of any dispute between Unit Owners as to the application of these restrictions or any rule or regulation promulgated by the Board, the party aggrieved shall submit a complaint in writing to the Board specifying the dispute. . . . Any controversy between Unit Owners or any claim by a Unit Owner against the Association or another Unit Owner arising out of or relating to this Declaration, the By-Laws or Rules or Regulations of the Association may be settled by mediation in accordance with the mediation rules of the American Arbitration Association after referral by the Board or a decision by the Board. Any Unit Owner involved in any such controversy may elect to send the matter to mediation after a decision by the Board, if applicable, upon written notice to the other parties thereto with a copy to the Association. No action at law may be instituted by either party to such a dispute unless mediation and or arbitration pursuant hereto has first been had.

(Am. Declaration, Art. III, Sec. 2(q).). Together, the two arbitration provisions constitute the arbitration agreement. The trial court determined that appellants' claims against the condo association fell within the arbitration agreement and, thus, appellants had agreed to arbitrate their claims against the condo association. On appeal, appellants assert the court erred in compelling arbitration for three distinct reasons. First, appellants argue the arbitration agreement is unenforceable. Second, appellants argue their claims against the condo association fall within an exception to the arbitration agreement. Third, appellants argue the arbitration agreement provides only for non-binding arbitration, which would violate Ohio law. We address each of these arguments in turn.

## A. Enforceability of the Arbitration Agreement

{¶ 23} Appellants argue the trial court erred in compelling arbitration because the arbitration agreement contained in the bylaws is unenforceable. More specifically, appellants argue the arbitration agreement is: (1) contrary to public policy, (2) illusory, and (3) in conflict with R.C. Ch. 5311.

### 1. The Arbitration Agreement Does Not Violate Public Policy

{¶ 24} Appellants first argue the arbitration agreement is unenforceable as against public policy. Generally, Ohio recognizes a strong public policy in favor of arbitration. *Hayes v. Oakridge Home*, 2009-Ohio-2054, ¶ 15, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 27. " ' "[A]rbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." ' " *Id.*, quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712 (1992), quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83 (1986). Because of the strong public policy in favor of arbitration, the Supreme Court has directed that any doubts should be resolved in favor of arbitration. *Id.*, citing *Ignazio v. Clear Channel Broadcasting Inc.*, 2007-Ohio-1947, ¶ 18.

{¶ 25} Further reflecting Ohio's strong public policy in favor of arbitration, R.C. 2711.01(A) provides an arbitration agreement "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." Thus, an arbitration agreement is enforceable unless there are grounds, at law or in equity, for revoking the arbitration agreement. *Hayes* at ¶ 19, citing R.C. 2711.01(A). Additionally, " '[a] contract is not void as against public policy unless it is injurious to the public or contravenes some established interest of society.' " *Gugle v. Loeser*, 143 Ohio St. 362, 367 (1944), quoting *Wood on Fee Contracts of Lawyers*, 268, Section 88. Appellants recognize the strong public policy in Ohio favoring arbitration but argue the specific arbitration agreement here violates public policy because it is injurious to the interests of the state by negating the remedial interests of the Ohio Condominium Act, codified at R.C. Ch. 5311.

{¶ 26} The Ohio Condominium Act requires the creation of a unit owners' association to administer condominium property. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.*, 67 Ohio St.3d 274, 280 (1993), citing former R.C. 5311.08. R.C. 5311.19(A) provides "[v]iolations of [the] covenants, conditions, or restrictions [set forth in the deed, declaration, bylaws, or rules of the association] shall be grounds for the unit owners association or any unit owner to commence a civil action for damages, injunctive relief, or both, and an award of court costs and reasonable attorney's fees in both types of action." The amended declaration provides:

> [T]he Association and each Unit Owner shall have rights of
> action against each other for failure to comply with the

> provisions of the Condominium Organizational Documents, rules and regulations, and applicable law, and with respect to decisions made pursuant to authority granted thereunder, and the Association shall have the right to assess reasonable charges against a Unit Owner who fails to comply with the same, *including the right to assess charges for the costs of enforcement and arbitration.*

(Am. Declaration, Art. XVIII, Sec. 2.) (Emphasis added.) Appellants assert that because the amended declaration allows the condo association to recover costs for arbitration against a unit owner but does not provide for a reciprocal right for a unit owner to recover costs against the condo association, the arbitration agreement negates the remedial purpose of R.C. 5311.19(A).

{¶ 27} In support of their argument, appellants rely on *Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200 (8th Dist.), for the position that an arbitration agreement is unenforceable where it attempts to modify Ohio law. *Hedeen* involved an action pursuant to the Ohio Consumer Sales Practices Act and the mechanism for fee recovery by the prevailing party in certain circumstances as outlined in R.C. 1345.09(F), including a requirement that the consumer "filed or maintained [the action] in bad faith." *Id.* at ¶ 40-41. The Eighth District found the "loser-pays" provision in the arbitration agreement violated public policy because it eliminated the bad-faith requirement and allowed a defendant-supplier to recover attorney fees so long as the defendant-supplier was the prevailing party regardless of whether the consumer brought the action in good faith. *Id.* at ¶ 48. Thus, the Eighth District determined the arbitration agreement removed a protection from the Ohio Consumer Sales Practices Act. *Id.*

{¶ 28} As appellees note, the instant matter does not involve the Ohio Consumer Sales Practices Act. More broadly, the reasoning in *Hedeen* does not apply here. While the amended declaration expressly provides the condo association may assess reasonable charges for enforcement and arbitration against a unit owner where the unit owner fails to comply with governing documents, rules, and/or applicable law, it is merely silent as to a unit owner's ability to recover attorney fees in an action under R.C. 5311.19(A). Thus, the arbitration agreement does not remove a protection from R.C. 5311.19(A). Though appellants argue the lack of mutuality in fee shifting renders the agreement a violation of public policy, Ohio law does not require mutuality in an arbitration clause so long as there

is consideration to support the underlying contract. *Reno v. Bethel Village Condominium Assn.*, 2008-Ohio-4462, ¶ 9 (10th Dist.), citing *Taylor Bldg. Corp. of Am.*, 2008-Ohio-938, at ¶ 65. Appellants do not argue the underlying contract lacks consideration. Accordingly, the arbitration agreement is not unenforceable as against public policy. *See Murtha v. Ravines of McNaughten Condominium Assn.*, 2010-Ohio-1325, ¶ 13 (10th Dist.) (recognizing "the general rule that disputes between condominium associations and unit owners over actions and decisions of the condominium association are subject to arbitration under a valid arbitration clause").

### 2. *The Arbitration Agreement Is Not Illusory*

{¶ 29} Appellants next argue the arbitration agreement is unenforceable because it is illusory. " 'A contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory.' " *Pohmer v. JP Morgan Chase Bank, N.A.*, 2015-Ohio-1229, ¶ 23 (10th Dist.), quoting *Imbrogno v. MIMRx.com, Inc.*, 2003-Ohio-6108, ¶ 8 (10th Dist.) If a promise is illusory, it is not enforceable. *Id.*, citing *Imbrogno* at ¶ 8. "An arbitration provision is enforceable if the right of modification is limited by a notice or timing provision." *Wolfe v. J.C. Penney Corp.*, 2018-Ohio-3881, ¶ 22 (10th Dist.).

{¶ 30} Appellants argue the arbitration agreement is illusory because the condo association has unilateral authority to amend the arbitration agreement. However, the plain terms of the amended declaration do not support appellants' position. Article XVII, Section 4(14) of the amended declaration allows an amendment to "any of the provisions governing the rights of any specific class of members" with "consent of the Unit Owners exercising not less than seventy-five percent (75%) of the voting power" and consent of at least 51-percent of "Eligible Holders of First Mortgages on Units." (Am. Declaration, Sec. 4(14).). Because the arbitration agreement is part of the declaration, any amendment to the arbitration agreement requires the consent of 75 percent of the unit owners. Thus, the condo association cannot unliterally amend the arbitration agreement.

{¶ 31} Appellants additionally argue the arbitration agreement is illusory because the first arbitration provision overlaps with the second arbitration provision in that "the Arbitration Provision requires arbitration of *certain* claims and the Mediation Provision requires mediation of *all* claims." (Emphasis in original.) (Appellants' Brief at 29.)

Appellants assert this conflict creates dispute resolution obligations that are too vague to be enforceable. *See Imbrogno*, 2003-Ohio-6108, at ¶ 19 (a contract term is unenforceable as vague when the rights and obligations of the parties cannot be determined).

{¶ 32} We disagree. Appellants' argument does not account for the difference in the operative language in each provision. The first arbitration provision refers to ***mandatory*** arbitration while the second arbitration provision refers to ***permissive*** mediation. Though appellants argue for the first time on appeal that there is too much overlap in these two provisions, we note, as the trial court did in its decision, that no party has suggested the amended declaration ***requires*** the court to order mediation before sending the claims to arbitration. Stated another way, appellants do not assert the trial court erred in ordering arbitration instead of mediation; rather, appellants argue the trial court should not have ordered arbitration at all. We do not agree with appellants that any overlap in the two arbitration provisions renders the arbitration agreement unenforceable. The arbitration agreement is therefore not illusory or unenforceable for vagueness.

### 3. The Arbitration Agreement Does Not Conflict with R.C. Chapter 5311

{¶ 33} Appellants also argue the arbitration agreement is unenforceable because it conflicts with R.C. Ch. 5311. The amended declaration states: "In the event any language of this Declaration conflicts with mandatory provisions of the Condominium Act, the latter's requirements shall prevail and the conflicting language shall be deemed to be invalid and void." (Am. Declaration, Art. XVIII, Sec. 3.) As noted above, R.C. 5311.19 provides a violation of a condominium's governing documents "shall be grounds for . . . any unit owner to commence a civil action." R.C. 5311.19(A). Appellants assert the use of the mandatory "shall" in R.C. 5311.19 requires the conclusion that a civil action pursuant to R.C. 5311.19(A) is the exclusive remedy for a unit owner challenging an action of the condo association. Thus, appellants assert the arbitration agreement is unenforceable because it requires arbitration rather than a civil action.

{¶ 34} We are not persuaded by appellants' argument. Though R.C. 5311.19(A) provides for a cause of action, nothing in the language of the statute either requires resolution through civil litigation or precludes arbitration. *See Harrison v. Winchester Place Nursing & Rehab. Ctr.*, 2013-Ohio-3163, ¶ 61 (10th Dist.) (rejecting the appellant's argument that an arbitration provision violated a statutory right to pursue a civil action under R.C. 3721.17, which states a resident of nursing home or residential care facility "has

a cause of action," because "the statute does not forbid a claim from being arbitrated"). (Emphasis omitted.) *See also Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 2006-Ohio-657, ¶ 20 (explaining "[s]tatutory claims . . . are neither per se arbitrable or not arbitrable" but "must undergo the analysis that every other claim faces: whether the parties agreed to arbitrate the issue"). Because the language of the arbitration agreement does not conflict with the language of R.C. 5311.19, appellants do not demonstrate the arbitration agreement is unenforceable.

## B. Exception to the Arbitration Agreement

{¶ 35} Having determined the arbitration agreement is enforceable, we turn to appellants' next argument: the specific claims here are not subject to arbitration because they fall within an exception to the arbitration agreement.

{¶ 36} The amended declaration sets forth the types of assessments a unit owner "agree[s] to pay to the Association: (1) annual operating assessments, (2) special assessments for capital improvements, and (3) special individual Unit assessments, all of such assessments to be established and collected as hereinafter provided." (Am. Declaration, Art. XV, Sec. 1.) As noted above, the first arbitration provision in the amended declaration provision provides that "in the event of any dispute between the Association and a Unit Owner or Occupant, *other than with regard to assessments*, that cannot be settled by agreement between them, the matter shall first be submitted to arbitration in accordance with and pursuant to the arbitration law of Ohio then in effect." (Emphasis added.) (Am. Declaration, Art. XVIII, Sec. 2.) Appellants argue the language "other than with regard to assessments" creates an exception to the general arbitrability of claims between the condo association and a unit owner. The trial court agreed with appellants that claims "with regard to assessments" are not subject to arbitration but disagreed with appellants that their claims against the condo association fall within that exception. The issue before us, then, is whether appellants' claims against the condo association are claims "with regard to assessments."

{¶ 37} "Arbitration is a matter of contract[,] and a party cannot be required to submit a dispute to arbitration when it has not agreed to do so." *Doe v. Vineyard Columbus*, 2014-Ohio-2617, ¶ 15 (10th Dist.), citing *Academy of Medicine of Cincinnati*, 2006-Ohio-657, at ¶ 11. A court determining the scope of an arbitration agreement looks first to whether the parties agreed to arbitrate a dispute. *Id.*, quoting *Columbus Steel*

*Castings, Inc. v. Real Time Staffing Servs., Inc.*, 2011-Ohio-3708, ¶ 13 (10th Dist.), quoting *White v. Equity Inc.*, 2010-Ohio-4743, ¶ 19 (10th Dist.), quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, the court is to focus on the factual allegations in the complaint rather than the legal causes of action asserted." *ABC Home Care & Nursing Servs. v. Molina Healthcare of Ohio, Inc.*, 2018-Ohio-2370, ¶ 24 (10th Dist.), citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003).

{¶ 38} Appellants argue their claims against the condo association fall within the exception because they allege the condo association failed to collect assessments from certain other unit owners. However, the mere use of the word "assessments" in describing their claims does not, in and of itself, trigger the exception to the arbitration clause. *See Lingo v. State*, 2014-Ohio-1052, ¶ 38 ("[r]egardless of how an action is labeled, the substance of the party's arguments and the type of relief requested determine the nature of the action"). Instead, the material allegations in appellants' amended complaint demonstrate appellants' claims relate to the condo association's *collection* practices, not to its *assessment* practices. Their amended complaint admits as much, stating that "[d]espite the flagrant delinquencies of [other unit owners], the Board has never taken any meaningful action *to collect the amount due*," and the condo association breached its duty to comply with the amended declaration "by *failing to collect* operating assessments from Unit Owners." (Emphasis added.) (Am. Compl. at ¶ 59, 147.) In their merit brief on appeal, appellants repeatedly describe their claims as relating to the condo association's *failure to collect* assessments, not as relating to the assessments themselves. (Appellants' Brief at 37.)

{¶ 39} Though appellants attempt to recast the allegations in their complaint to avoid arbitration, the substance of their claims against the condo association challenge the condo association's collection practices. Such collection practices do not involve fees unit owners agree to pay according to the definition of "assessments" set forth in the amended declaration and, thus, are not claims "with regard to assessments." Appellants urge an interpretation of the arbitration agreement that would render the arbitration agreement meaningless as it would allow any unit owner to avoid arbitration simply by including the word "assessments" in their complaint regardless of whether the substance of the allegation related to the assessments themselves. We will not interpret the exception to the

arbitration agreement so broadly as to effectively nullify the remainder of the arbitration agreement. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 54 (in interpreting a contract, courts are required to "give effect to every provision of the contract" and will avoid an interpretation that would render a clause meaningless), citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362 (1997).

{¶ 40} For these reasons, we agree with the trial court that the substance of appellants' claims is the condo association's alleged failure to collect money. That the money allegedly owed is in the form of assessments does not convert the claims into a dispute "with regard to assessments" within the exception to the arbitration agreement. Thus, the exception to the arbitration agreement does not prohibit arbitration of appellants' claims against the condo association.

## C. Binding vs. Non-Binding Arbitration

{¶ 41} Finally, appellants argue the trial court erred in determining the arbitration agreement provides for binding arbitration. Appellants assert that because the first arbitration provision states a party must "first" submit a claim to arbitration, the intent of the provision is to have any arbitration be non-binding so the parties may then pursue other remedies. We disagree.

{¶ 42} The arbitration agreement does not expressly indicate whether the arbitration will be binding or non-binding. However, the amended declaration expressly states that arbitration will be "in accordance with and pursuant to the arbitration law of Ohio then in effect (presently Chapter 2711 of the Revised Code)." (Am. Declaration, Art. XVIII, Sec. 2.) As the trial court noted, Ohio does not recognize non-binding arbitration under R.C. Ch. 2711. *Miller v. Gunckle*, 2002-Ohio-4932, ¶ 10, citing *Schaefer*, 63 Ohio St.3d at 711. Thus, the contractual language, when read in concert with its reference to Ohio law, requires binding arbitration under R.C. Ch. 2711.

{¶ 43} Accordingly, the arbitration clause is enforceable, requires binding arbitration, and applies to appellants' claims against the condo association. Therefore, the trial court did not err in granting appellees' motion to stay proceedings pending arbitration, and we overrule appellants' first assignment of error.

## V.  Disposition

{¶ 44} Based on the foregoing reasons, the trial court did not err in granting appellees' motion to compel arbitration and stay proceedings pending arbitration.  Having overruled appellants' first assignment of error and having dismissed appellants' second assignment of error for lack of a final appealable order, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

JAMISON, P.J., and BEATTY BLUNT, J., concur.

_____