[Cite as *Al-Foutiyou v. N. Am. Islamic Trust, Inc.*, 2025-Ohio-2750.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Masjid Oumar Al-Foutiyou, | : | |
| Plaintiff-Appellee, | : | No. 24AP-686 |
| | | (C.P.C No. 24CV-5766) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| North American Islamic Trust, Inc., | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 5, 2025

**On brief:** *Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A., Kenneth R. Goldberg*, and *Loni R. Sammons*, for appellee. **Argued:** *Loni R. Sammons*.

**On brief:** *Isaac Wiles & Burkholder, LLC, Donald C. Brey, Dale D. Cook*, and *Trista M. Turley*, for appellant. **Argued:** *Dale D. Cook*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, P.J.

{¶ 1} Defendant-appellant, North American Islamic Trust, Inc. ("NAIT"), appeals from the Franklin County Court of Common Pleas' October 17, 2024 judgment entry denying NAIT's motion to stay proceedings for arbitration and November 15, 2024 order denying NAIT's motion to vacate. For the reasons which follow, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 24, 2024, plaintiff-appellee, Masjid Oumar Al-Foutiyou ("Al-Foutiyou"), filed a complaint in the trial court against NAIT.

{¶ 3} The complaint alleged that NAIT fraudulently obtained a 50 percent ownership interest in real property titled to Al-Foutiyou located on Refugee Road in Columbus, Ohio ("the property"). Specifically, the complaint alleged that beginning in April

of 2015, NAIT attempted to get Al-Foutiyou to transfer title of the property to NAIT and that NAIT would hold the property in trust. Despite not receiving approval from Al-Foutiyou, on May 1, 2015, a quit claim deed transferring a 50 percent ownership interest of the property to NAIT was filed with the Franklin County Recorder's Office. This was allegedly done without Al-Foutiyou's knowledge.

{¶ 4} On or about December 1, 2023, Al-Foutiyou entered into a real estate contract with a prospective buyer of the property. This is when Al-Foutiyou discovered that NAIT had been added to the deed of the property. Al-Foutiyou contacted NAIT in an attempt to convince NAIT to agree to the proposed sale. NAIT refused to consent to the sale. Counsel for Al-Foutiyou contacted NAIT requesting it execute a quit claim deed to remove its name from the deed to the property, but NAIT did not respond.

{¶ 5} The complaint alleged counts of fraud, declaratory judgment, partition, unjust enrichment, quiet title, and "construction [sic] trust." (July 24, 2024 Compl. at ¶ 53-56.)

{¶ 6} On September 18, 2024, NAIT filed a motion to stay proceedings pending arbitration. In its motion, NAIT alleged that in 2012, Al-Foutiyou and NAIT executed a written trust agreement regarding the property. Pursuant to the agreement, NAIT was to hold title to the property in perpetuity for Al-Foutiyou's benefit. The trust contained the following arbitration clause:

> Any dispute arising under Paragraphs 3, 30 or 31, including the interpretation of the term "Islamic Rules of Conduct" or "Islamic Code" or "Islamic Law" or "Islamic Principles" or "Islamic Faith" shall be subject to arbitration by a FIQH Committee of reputable Muslims in the United States (Islamic Jurisprudence Committee or Fiqh Council) appointed by the Trustee as Arbitrator. The decisions of such FIQH Committee shall be final and binding on both parties and entry of judgment may be made in a court of proper jurisdiction. All costs of any such arbitration shall be split equally between Grantor and Trustee.

(Declaration of Trust at ¶ 4.) It is undisputed that paragraphs 30 and 31 of the trust are not relevant to these proceedings.

{¶ 7} Paragraph three of the trust states as follows:

> The Real Estate shall be possessed, used, and operated by the Beneficiary exclusively for Islamic religious, educational and

similar activities, all in furtherance of Islamic faith and in compliance with Islamic Rules of Conduct and Code, applicable laws, rules and regulations, and the terms of this Trust.

*Id.* at ¶ 3.

{¶ 8} The trust also contained an Indiana choice-of-law provision.

{¶ 9} NAIT argued that the sale of the property necessarily implicates the possession, use, and/or operation of the property. Therefore, this dispute arose under paragraph three of the trust and triggered the arbitration clause.

{¶ 10} On the same day NAIT filed its motion to stay pending arbitration, it filed an answer to Al-Foutiyou's complaint with counterclaims.

{¶ 11} NAIT's answer alleged that in November of 2007, Al-Foutiyou's president, Ahmadou Kane, first communicated with NAIT about entrusting the property to NAIT for the purpose of Al-Foutiyou building a mosque on the site.

{¶ 12} In March of 2008, a general warranty deed for the property was filed, transferring it to Al-Foutiyou and NAIT. Kane assured NAIT that once the construction of the mosque was complete, the deed would be assigned to NAIT as the sole owner. The trust was fully executed by Al-Foutiyou and NAIT in June of 2012.

{¶ 13} The property was later foreclosed upon and sold for delinquent taxes. It was purchased by Midani Arfan. Kane allegedly discovered that the property had been sold in March of 2015. Arfan was willing to reconvey the property. On March 27, 2015, Arfan transferred his interests in the property to Al-Foutiyou via a quit claim deed. Al-Foutiyou allegedly quit claimed its interest in the property to itself and NAIT on April 29, 2015.

{¶ 14} NAIT's answer contained three counterclaims. First, NAIT sought legal costs and attorney fees incurred as a result of the litigation. Second, NAIT sought to enjoin Al-Foutiyou from selling the property or using the property other than what was provided for in the trust. Finally, NAIT sought transfer of 100 percent of the legal title of the property to NAIT.

{¶ 15} On October 2, 2024, Al-Foutiyou filed a memorandum contra to NAIT's motion for a stay pending arbitration. In its memorandum contra, Al-Foutiyou argued that even if the trust was a valid agreement, it terminated pursuant to its paragraph 6(b). Paragraph 6(b) of the trust states as follows:

> 6. TERM. The Trust, subject to prior termination in accordance with the terms hereof or under applicable laws, shall continue in perpetuity unless and until the occurrence of Cessation Event (as hereinafter defined). For purposes of this Agreement, a "Cessation Event" shall occur in the event of the following:
>
> . . .
>
> b. Any third party proceeds to seize or freeze the Trust assets of the Trustee, and such seizure or freezing of assets is not vacated within one hundred eighty (180) days of such event[.]

(Emphasis in original.)   (Declaration of Trust at ¶ 6.)   Al-Foutiyou asserted that the January 20, 2015 sheriff's sale of the property was a cessation event that terminated the trust.

{¶ 16} Al-Foutiyou further argued that even if the trust was a valid agreement, its claims are not subject to the trust's narrow arbitration clause.  In its argument, Al-Foutiyou pointed out that paragraph eight of the trust, which was not included in the arbitration clause, governed the sale of the property.  Paragraph eight stated, in part, as follows:

> 8. SALE OF REAL ESTATE AT REQUEST OF BENEFICIARY. In the event that the Beneficiary determines that it is necessary to sell or trade the Real Estate and apply the resulting proceeds towards other real property, the Beneficiary shall, in conformity to the applicable provisions of the Constitution and By-Laws of the Grantor and the Beneficiary, submit a request to the Trustee for the sale of the Real Estate and setting forth the expected net sales price for the Real Estate which the Beneficiary deems reasonable. . . .

(Emphasis in original.)  *Id.* at ¶ 8.

{¶ 17} On October 15, 2024, Al-Foutiyou filed its answer to NAIT's counterclaims.

{¶ 18} In a judgment entry filed October 17, 2024, the trial court denied NAIT's motion to stay proceedings for arbitration.  The trial court specifically found that NAIT's failure to invoke the arbitration clause during the foreclosure case, or when Al-Foutiyou reacquired the property in 2015, constituted a waiver of the provision or that it was barred by laches.  The trial court went on to find that the trust was no longer an enforceable agreement pursuant to its paragraph 6(b), and that the express terms of the arbitration clause did not apply to Al-Foutiyou's claims.

{¶ 19} On October 18, 2024, NAIT filed a reply in support of its motion to stay pending arbitration.  Attached to the motion was an affidavit from Maqsood Quadri, NAIT's

executive director.  In the affidavit, Quadri asserted that all factual allegations in NAIT's answer and counterclaim were true.

{¶ 20}  Because the trial court issued its judgment entry prior to NAIT's reply, NAIT filed a motion to vacate the October 17, 2024 judgment entry.  The court filed an order on November 15, 2024, overruling the motion to vacate, stating that the court reviewed and considered the arguments in NAIT's reply and those arguments did not change its decision.

{¶ 21}  It is from the trial court's October 17, 2024 judgment entry and November 15, 2024 order that NAIT now appeals.

## II.  ASSIGNMENTS OF ERROR

{¶ 22}  NAIT assigns the following two assignments of error for our review:

> 1. The trial court erred in denying the defendant's motion to stay the case pending arbitration.
>
> 2. The trial court erred in denying the defendant's motion to vacate.

## III.  STANDARD OF REVIEW

{¶ 23}  At the outset, it should be noted that the trust agreement has an Indiana choice-of-law provision.  Thus, Ohio procedural law governs this dispute with Indiana law governing the substantive interpretation of the arbitration agreement.  *Choice Hotels Internatl., Inc. v. C & O Developers, L.L.C.*, 2022-Ohio-3234, ¶ 14-16 (8th Dist.), citing *Shafer v. Metro-Goldwyn-Mayer Distrib. Corp.*, 36 Ohio App. 31 (10th Dist. 1929). However, the parties agree that Ohio and Indiana law are identical as to the issues presented in this appeal.  "A choice-of-law determination is unnecessary if the laws of each forum would reach the same result." *Choice Hotels Internatl., Inc.* at ¶ 16.  Therefore, this court will apply Ohio law as to whether the arbitration clause of the trust agreement applies to this dispute.

{¶ 24}  "Generally, when reviewing a motion to stay pending arbitration, the standard of review is an abuse of discretion." *Wolfe v. J.C. Penney Corp., Inc.*, 2018-Ohio-3881, ¶ 9 (10th Dist.), citing *Ohio Dept. of Adm. Servs. v. Design Group, Inc.*, 2007-Ohio-6278, ¶ 15 (10th Dist.).  However, questions of law, including the interpretation and construction of contracts, requires a de novo standard of review. *State ex rel. Rogers v. Philip Morris, Inc.*, 2008-Ohio-3690, ¶ 15 (10th Dist.).  More specifically, the question of

"[w]hether a party has agreed to submit an issue to arbitration is . . . subject to a de novo standard of review." *Wolfe* at ¶ 9.

{¶ 25} In interpreting contracts, the court is to give effect to the intent of the parties to the agreement. *State ex rel. Rogers* at ¶ 16. In doing so, the court should examine the contract as a whole and presume that the intent of the parties is reflected in the language used in the contract. *Id.* Where the terms of an arbitration clause are unambiguous, both Ohio and Indiana courts give the words used in the contract their plain, ordinary meaning. *Norwood Promotional Prods., Inc. v. Roller*, 867 N.E.2d 619, 625-626 (Ind.App. 2007); *Park Bldg. Condominium Assn. v. Howells & Howells Ents., L.L.C.*, 2017-Ohio-1561, ¶ 14 (8th Dist.), citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989).

{¶ 26} There is a presumption for arbitration over litigation when a claim in a dispute falls within the scope of an arbitration clause. *Pyle v. Wells Fargo Fin.*, 2005-Ohio-6478, ¶ 12 (10th Dist.). Although there is a presumption in favor of arbitration, "[a] party cannot be compelled to arbitrate a dispute which he has not agreed to submit to arbitration." *State ex rel. Rogers* at ¶ 17. " 'An arbitration agreement will be enforced unless the court is firmly convinced that (1) the clause is inapplicable to the dispute or issue in question or (2) the parties did not agree to the clause.' " (Further quotation marks and citation omitted.) *Wolfe* at ¶ 9, quoting *Doe v. Vineyard Columbus*, 2014-Ohio-2617, ¶ 14 (10th Dist.).

{¶ 27} " 'The decision of a trial court regarding a motion to vacate a judgment will not be overturned on appeal absent an abuse of discretion.' " *Chuang Dev. L.L.C. v. Raina*, 2017-Ohio-3000, ¶ 29 (10th Dist.), quoting *C & W Invest. Co. v. Midwest Vending, Inc.*, 2003-Ohio-4688, ¶ 7 (10th Dist.). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Most instances of an abuse of discretion result in decisions that are unreasonable as opposed to arbitrary and capricious. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157 (1990). "A decision that is unreasonable is one that has no sound reasoning process to support it." *State ex rel. Rogers* at ¶ 14.

## IV. LEGAL ANALYSIS

{¶ 28} Initially, it should be noted that the trial court denied NAIT's motion to stay pending arbitration on multiple, alternative bases. The trial court found that (1) NAIT waived the arbitration clause, or its invocation was barred by laches, (2) the trust was no longer enforceable due to a cessation event, and (3) the clause's express terms excluded Al-Foutiyou's claims. In its initial brief, NAIT did not challenge the court's finding that NAIT's request for arbitration was barred by waiver and/or laches. " 'When a trial court grants judgment on multiple, alternative bases and an appellant does not challenge one of those bases on appeal, [an appellate court] will uphold the judgment on the unchallenged bases.' " *State v. Crumpton*, 2024-Ohio-5064, ¶ 22 (4th Dist.), quoting *Schutte v. Summit Cty. Sheriff's Office*, 2018-Ohio-2565, ¶ 21 (9th Dist.). Thus, this court could arguably affirm the trial court's judgment on that basis. However, we will address the trial court's other two bases for denying NAIT's motion to stay pending arbitration.

{¶ 29} Because NAIT's assignments of error are related, we will address them together. In its first assignment of error, NAIT contends that the trial court erred in denying NAIT's motion to stay pending arbitration. More specifically, NAIT argues that the court erred by failing to consider the presumption in favor of arbitration; narrowly and incorrectly construing the arbitration clause's language; and ignoring events after the sheriff's sale of the property in determining the trust was terminated. (Appellant's Am. Brief at 6.) In its second assignment of error, NAIT alleges that the trial court erred in denying NAIT's motion to vacate. More specifically, NAIT contends that by adopting its initial decision in its entirety, it once again ignored facts occurring after the alleged "Cessation Event." *Id*. at 17.

{¶ 30} As previously stated, when analyzing an arbitration clause, the presumption in favor of arbitration only arises where the dispute falls within the scope of the arbitration clause. *Pyle*, 2005-Ohio-6478, at ¶ 12 (10th Dist.). Thus, NAIT's contention that the trial court ignored the presumption in favor of arbitration necessarily involves the question of whether the trial court properly concluded that the arbitration agreement excluded Al-Foutiyou's claims. The trial court found that the express terms of the arbitration clause only required arbitration of disputes arising under paragraphs 3, 30, or 31 of the trust. The trial court went on to find that the arbitration clause did not include disputes arising out of

the sale of the property, which was discussed in paragraph eight of the trust. NAIT argues that the trial court interpreted the arbitration clause too narrowly and that the sale of the property necessarily involves the possession, use, and operation of the property under paragraph three.

{¶ 31} This court recently analyzed an arbitration agreement in *LeVeque 41, L.L.C. v. LeVeque Tower Condominium Assn., Inc.*, 2025-Ohio-2055 (10th Dist.). In *Leveque 41, L.L.C.*, the plaintiffs filed a complaint against the defendants for disregarding the obligations owed to all condominium unit owners by allowing collection delinquencies in condominium assessments owed by several defendants. *Id*. at ¶ 4. Defendants filed a motion to stay the proceedings pending arbitration based on an arbitration agreement, which stated, in part, as follows, "in the event of any dispute between the Association and any Unit Owner or Occupant, other than with regard to assessments, that cannot be settled by an agreement between them, the matter shall first be submitted to arbitration." *Id*. at ¶ 22. Plaintiffs argued that their claims fell into the express exception contained in the clause because the claims had to do with condominium assessments. *Id*. at ¶ 38. However, in narrowly construing the arbitration agreement, this court held that plaintiffs' claims did not fall into the exception because their claims were about the assessment collection practices of the condominium association, not the actual assessments. *Id*. at ¶ 39. Thus, this court affirmed the trial court's decision granting the defendants' motion to compel arbitration and stay the proceedings. *Id*. at ¶ 44.

{¶ 32} The case at hand is similar to *Leveque 41, L.L.C.* Here, NAIT is making a contractual interpretation argument that is similar to the plaintiffs' argument in *Leveque 41, L.L.C.* NAIT argues that the sale of the property necessarily involves the property's possession, use, and operation. The plaintiffs in *Leveque 41, L.L.C.*, alleged that their claims fell into the arbitration exception because they involved assessments. *Id*. at ¶ 38. Following this court's analysis in *Leveque 41, L.L.C.*, just because a dispute or claim might mention or tangentially relate to an issue covered by the express terms of an arbitration clause, it does not mean that the dispute is subject to arbitration. The court must look to the heart and substance of the claims before it. *Id*. at ¶ 38. Here, the substance of Al-Foutiyou's claims surround the potential sale of the property and alleged fraud in adding NAIT to the deed for the property, not the property's possession, use, or operation for

Islamic purposes. Thus, the trial court properly found that the dispute did not fall into this unambiguous, narrow arbitration agreement.

{¶ 33} Furthermore, NAIT's argument ignores the fact that the trust contains a separate paragraph for the sale of the property. The trust specifically discusses the sale of real estate at the request of the beneficiary in paragraph eight. Paragraph eight is not included in the arbitration agreement. "[I]n making the determination of whether a dispute falls within an arbitration clause, the court must classify the particular clause as either broad or narrow and, if narrow, it is to be strictly construed as to the matters which are included within the arbitration requirement." *State ex rel. Rogers*, 2008-Ohio-3690, at ¶ 79 (10th Dist.). We find that the arbitration agreement in this case is narrow. It is specifically limited to three paragraphs of a trust that includes 36 separate paragraphs. Simply put, had the parties intended to arbitrate disputes over the sale of the property, they could have included paragraph eight in the arbitration clause, but they did not do so.

{¶ 34} Based on the foregoing, we find that the trial court did not err in finding that the express terms of the arbitration agreement do not compel arbitration in this case.

{¶ 35} Turning now to the issue of whether the trust was terminated by a cessation event. Initially, NAIT states that there is a factual dispute about what happened after the property's foreclosure. (Appellant's Am. Brief at 17.) However, in the next sentence NAIT states this issue involves the interpretation of an agreement, which is a question of law. *Id*. Based on our complete review of the proceedings, there appears to be little, if any, dispute over the facts of this matter up until the time when NAIT is added to the property's deed in April of 2015. Thus, the issue is not about what happened, but rather, whether what happened created a cessation event according to the language of the trust.

{¶ 36} In paragraph 6(b), the trust defines a cessation event, in part, as a seizure or freezing of assets that is not vacated within 180 days. The parties do not appear to dispute that the foreclosure was a seizure or freezing of the property. Rather, NAIT contends that Al-Foutiyou's repurchase of the property, and NAIT being added to the deed in the months following the January 2015 sheriff's sale, means that the foreclosure was vacated. The term "vacate" is not defined in the trust. Therefore, we interpret the term according to its plain, ordinary meaning unless doing so would create an absurd result. *Columbus Steel Castings, Inc. v. Real Time Staffing Servs., Inc.*, 2011-Ohio-3708, ¶ 18 (10th Dist.). The dictionary

definition of vacate includes "to make legally void: annul." *Merriam-Webster Online*, merriam-webster.com/dictionary/vacate (accessed August 4, 2025). Based on our review of the record, nothing occurred that vacated the property's foreclosure. Al-Foutiyou's repurchase of the property and NAIT being added to the deed after the sheriff's sale did nothing to annul or make the foreclosure legally void. In sum, the alleged return to the status quo did nothing to "vacate" the foreclosure of the property. Based upon the foregoing, we find that the trial court did not err in determining that the trust was terminated by a cessation event.

{¶ 37} Based on our review of the entire record and our consideration of the parties' arguments, we hold that the trial court did not err in denying NAIT's motion for stay pending arbitration. We further find that because the trial court did not err in its denial of NAIT's motion for stay pending arbitration, it also did not abuse its discretion in denying NAIT's motion to vacate. NAIT's two assignments of error are overruled.

## V. CONCLUSION

{¶ 38} Having overruled NAIT's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and EDELSTEIN, JJ., concur.

_____